Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modifications.
The parties' Pre-Trial Agreement dated 13 November 1996 and the documents attached are incorporated herein as part of the evidence of record. The parties stipulated at the hearing before the Deputy Commissioner that plaintiff's last date worked was 6 March 1996. The parties further stipulated into evidence exhibit 1, a videotape depicting the performance of the glaze wiper job.
Based upon all of the competent, credible evidence of record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who is in her mid-twenties and has a 10th grade education, worked part-time at McDonald's after high school where she primarily took and filled orders and occasionally operated the cash register. She later obtained positions as a foot pedal machine operator at a shoe factory and as an attendant for a watch business. Immediately before becoming employed with defendant, she worked as a cashier at Wendy's. She was employed by Wendy's for approximately one year before she quit due to the restaurant's distance from her home.
2. On 15 January 1996, plaintiff began working for defendant as a glaze wiper. Her duties included wiping, brushing, and sanding furniture, including wicker chairs and sofa frames, to ensure that the spray coating was smooth. During an 8-hour shift she worked on approximately 400 pieces of furniture. Plaintiff, who is right-hand dominant, used her hands to wipe, brush, and sand the furniture. She also used her hands to pick up and tilt the furniture so she could reach the entire frame. She did this for approximately 90 percent of the shift, excluding two breaks and lunch time. She would periodically throw away her used cloths and clean up her work area, and sometimes worked with a partner.
3. Plaintiff flexed and extended her right elbow and wrist while working on the furniture. Plaintiff's duties involved multiple rapid hand movements, with repetitive wrist, elbow, and shoulder movements. These repetitive grasping and rubbing motions placed stress primarily on plaintiff's hands and wrists, with secondary stress on the elbows and shoulders.
4. On 5 March 1996, plaintiff brushed furniture for an extended period of time during her 8-hour shift and felt pain in her right arm. On 5 March 1996, plaintiff brushed the finish of wicker Weather Master furniture, which she found more difficult than normal. Before 5 March 1996, she had not experienced any significant right hand, arm, or elbow problems.
5. From 15 January 1996 through 5 March 1996, plaintiff worked a total of 24 days on an intermittent basis because she was out of work on occasions due to illness, non-availability of work, and the weather. On 4 March 1996 and 5 March 1996, plaintiff worked two full 8 hour shifts.
6. While working on 6 March 1996, swelling began from plaintiff's right fingertips to an area beyond the elbow. Plaintiff was sent to defendant's first-aid station upon advising Glenn Hayes, her supervisor, that her arm was painful and swelling. She was referred to Dr. Robert Hart, the company physician. Following an examination, Dr. Hart diagnosed overuse syndrome and tendonitis of the right wrist and arm. He prescribed pain medication, a fixed cock-up splint, and restricted her to limited repetitive motion of the right hand.
7. Following her examination by Dr. Hart on 6 March 1996, plaintiff spoke with Junior Norris, Mr. Hayes' supervisor, who allowed her to go home and instructed her to call or come in the next day depending upon how she felt. On 7 March 1996, she called Mr. Hayes who told her to stay at home because of her continuing problems. Plaintiff, who was not scheduled to work on Friday, March 8, called Anne Story on Monday, March 11, and advised her that she needed to see Dr. Hart before her next scheduled appointment with him because of her pain and swelling. Ms. Story arranged an appointment for her on 12 March 1996.
8. On 12 March 1996, plaintiff presented to Dr. Hart with complaints of continued pain and numbness. He restricted her to marked limited use of the right hand, continued use of the splint, and he prescribed medication and therapy.
9. Later on 12 March 1996, plaintiff showed Mr. Hayes and Mr. Norris the note from Dr. Hart concerning her work restrictions. Mr. Norris discussed the possibility of light duty work. However, Mr. Hayes reminded Mr. Norris of plaintiff's tardiness and failure to timely call in absences both before and allegedly after 6 March 1996. Mr. Norris then terminated plaintiff from her employment. On 12 February 1996, Mr. Hayes counseled plaintiff about her tardiness and absenteeism, which he rated as below average on a report which both he and she signed.
10. On 25 March 1996, plaintiff presented to Dr. Hart on follow-up. Dr. Hart released her with a splint to return to her regular job. When plaintiff went to Ms. Story to seek re-employment in late March 1996, Ms. Story told her that she could not be re-hired.
11. During the period from 31 March 1996 through 1 September 1996, plaintiff received unemployment benefits of $114.00 weekly. Although she continued to wear the wrist splint part of that period and continued to have pain, she unsuccessfully sought employment as a cashier at about 20 fast food businesses from 3 April 1996 through 25 June 1996.
12. On 26 April 1996, plaintiff again presented to Dr. Hart. Her condition, including pain and numbness, had progressively worsened. Dr. Hart referred her to Dr. C. Michael Nicks.
13. On 19 April 1996, plaintiff presented to Dr. Nicks. She underwent a nerve conduction velocity test on 14 May 1996, which confirmed that plaintiff suffered from moderate carpal tunnel syndrome of her right upper extremity, and mild ulnar neuropathy of the right elbow. Plaintiff remained under Dr. Nicks' care through 5 June 1996, receiving injections and medications for treatment of her conditions. Ultimately, he recommended surgery for both conditions.
14. Defendant referred plaintiff to Dr. Joseph J. Estawanik. On June 13, 1996, plaintiff presented to Dr. Estawanik. Following an examination, Dr. Estawanik also recommended surgery for plaintiff's right upper extremity carpal tunnel syndrome and ulnar neuritis. Dr. Estawanik felt that plaintiff's conditions were repetitive motion overuse injuries, and not related to trauma.
15. On 7 November 1996, upon referral from her attorney, Dr. E. Brown Crosby examined and evaluated plaintiff. Thereafter, plaintiff remained under his care for treatment of her carpal tunnel syndrome and ulnar neuritis. Plaintiff's conditions continued to deteriorate despite conservative treatment rendered with medications, splinting, and narcotic pain medication. On 15 January 1997, Dr. Crosby performed surgical carpal tunnel release and transposition of the ulnar nerve on plaintiff's right upper extremity. This surgery revealed that she had notable compression of the median and ulnar nerves. Post-operatively, plaintiff has continued her recovery and, on 11 February 1997, she remained on narcotic medication because of the severity of her pain.
16. The repetitive motion activity of plaintiff's right upper extremity while performing the glaze wiping job at defendant's facility caused or aggravated her carpal tunnel syndrome on the right and ulnar neuritis at the right elbow. That work activity also increased the risk of her developing or aggravating those conditions compared to members of the general public.
17. As a result of her carpal tunnel syndrome and ulnar neuritis and the attendant pain, numbness, and swelling, plaintiff has been unable to earn any wages in any employment since 6 March 1996. Her average weekly wage was $171.50 ($1,274.00 divided by 7.4286 weeks for the period from 15 January 1996 through 6 March 1996).
18. As of the time of the hearing before the Deputy Commissioner, plaintiff continued to recover from her carpal tunnel syndrome, ulnar neuritis and surgery and had not yet reached the end of the healing period.
19. Plaintiff's claim was defended on reasonable grounds.
 ***********
Based upon the foregoing findings of fact, the Full Commission hereby makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's carpal tunnel syndrome and ulnar neuritis were caused by conditions characteristic of and peculiar to her employment with defendant, and her employment placed her at an increased risk of developing those conditions compared to members of the general public. Plaintiff's carpal tunnel syndrome and ulnar neuritis are compensable occupational diseases within the meaning of the Act. N.C. Gen. Stat. § 97-53(13).
2. Plaintiff's average weekly wage was $171.50. N.C. Gen. Stat. § 97-2(5).
3. As a result of her occupational diseases, plaintiff has been temporarily totally disabled since 6 March 1996 and is entitled to compensation at the rate of $114.33 per week beginning 7 March 1996 and continuing thereafter until further order of the Commission. Defendant is entitled to a credit of $114.00 per week for the period from 31 March 1996 through 1 September 1996, during which plaintiff received unemployment benefits. As of the date of the hearing before the Deputy Commissioner, she had not yet reached the end of the healing period. N.C. Gen. Stat. §§ 97-29,97-42.1, 97-53(13), 97-54.
4. Defendant is obligated to provide to plaintiff such medical treatment as is reasonably required to effect a cure, give relief, or which tends to lessen the period of her disability. N.C. Gen. Stat. §§ 97-2(19), 97-59.
5. Plaintiff's motion for attorney's fees is denied because defendant had reasonable grounds to defend this action. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved in paragraph two (2) below, defendant shall pay plaintiff compensation at the rate of $114.34 per week beginning 7 March 1996 and continuing thereafter until further Order of the Commission, less a credit to defendant at the rate of $114.00 per week for the period from 31 March 1996 through 1 September 1996. To the extent that this compensation has accrued, it shall be paid in a lump sum.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph 1 of this award is approved for plaintiff's counsel. This attorney's fee shall be deducted from the compensation due plaintiff and shall be paid as follows: twenty-five percent (25%) of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel; thereafter, plaintiff's counsel shall receive every fourth compensation check.
3. Defendant shall provide to plaintiff such medical treatment as is reasonably required to effect a cure, give relief, or which tends to lessen the period of her disability.
4. Defendant shall pay the costs, including an expert witness fee of $400.00 to Dr. Estwanik.
5. Plaintiff's motion for attorney's fees is denied.
 S/ ________________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER